IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PEARL MADISON, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-13-3020 |
| JAMES B. NUTTER & CO., FEDERAL NATIONAL MORTGAGE ASSOCIATION, and E-LOANSTOGO.COM, INC., | § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Pearl Madison brought this action in the 189th Judicial District Court of Harris County, Texas, where it was filed under Cause No. 2013-55185.[1] Defendants James B. Nutter & Co. ("Nutter") and Federal National Mortgage Association ("Fannie Mae") timely removed.[2]

Pending before the court are James B. Nutter & Co.'s Amended Motion for Summary Judgment ("Nutter MSJ") (Docket Entry No. 22) and Federal National Mortgage Association's Motion for Summary Judgment ("Fannie Mae MSJ") (Docket Entry No. 23). For the reasons

---

[1]See Plaintiff's Second Amended Petition and Application for Injunction and Temporary Restraining Order ("Complaint"), Exhibit A.7 to Defendant's Notice of Removal, Docket Entry No. 1-8.

[2]See Defendant's Notice of Removal ("Notice of Removal"), Docket Entry No. 1; Order Denying Plaintiff's Motion to Remand, Docket Entry No. 10.

stated below, Nutter's Motion for Summary Judgment will be granted in part and denied in part, Fannie Mae's Motion for Summary Judgment will be granted, and Fannie Mae will be dismissed from this action.

## I. **Background**

On December 22, 2006, Madison signed an Adjustable Rate Note, a Home Equity Conversion Loan Agreement, and an Adjustable Rate Deed of Trust (collectively, the "Mortgage Agreements") in favor of Access Reverse Mortgage and secured by Madison's home in Houston, Texas.[3] Five days later the Mortgage Agreements were transferred to Defendant Nutter.[4] In August of 2010 Nutter notified Madison that she was required to have flood insurance on her property and that if she did not purchase such insurance herself, Nutter would do so on her behalf.[5] Nutter states that Madison did not comply and that Nutter purchased insurance on her behalf in 2010, 2011, and 2012.[6] Nutter claims to have "advised Plaintiff that she

---

[3]See Exhibits 1-3 to Nutter MSJ, Docket Entry Nos. 22-3, 22-4, 22-5.

[4]Corporation Assignment of Deed of Trust, Exhibit 5 to Nutter MSJ, Docket Entry No. 22-7.

[5]Complaint, Exhibit A.7 to Notice of Removal, Docket Entry No. 1-8, p. 14 ¶ 15. Neither party has produced a copy of this correspondence.

[6]Affidavit in Support of Defendant's Motion for Summary Judgment, Docket Entry No. 22-2, p. 2 ¶ 8.

needed to repay [Nutter] for obtaining the flood insurance on each of these occasions."[7]

On May 17, 2012, Nutter sent Madison a Notice of Intent to Foreclose, stating that Madison was in default because she failed to pay "Real Estate Taxes and/or homeowners Hazard Insurance."[8] As a result, Madison's loan had been called due and payable, and Madison had 30 days to correct the default.[9] On December 18, 2012, Nutter filed an application to foreclose on the property.[10] A Default Order Allowing Foreclosure was entered on March 7, 2013.[11] On April 10, 2013, Nutter notified Madison that her property was scheduled for foreclosure sale on May 7, 2013.[12]

However, on April 23, 2013, Nutter sent Madison a Repayment Plan Agreement, which stated that she owed Nutter $3,807.25 for "tax and/or insurance items," but that she could pay off that

---

[7] Id.

[8] Notice of Intent to Foreclose, Exhibit 6 to Nutter MSJ, Docket Entry No. 22-8.

[9] Id.

[10] Application for Court Order Allowing Foreclosure of a Lien Securing a Reverse Mortgage Loan Under Texas Constitution Article XVI, Section 50(k), Cause No. 2012-73948, in the 333rd Judicial District Court of Harris County, Texas, Exhibit 7 to Nutter MSJ, Docket Entry No. 22-9.

[11] Default Order Allowing Foreclosure, Cause No. 2012-73948, Exhibit 8 to Nutter MSJ, Docket Entry No. 22-10.

[12] Notice of Acceleration and Notice of Trustee's Sale, Exhibit 9 to Nutter MSJ, Docket Entry No. 22-11, p. 2.

amount in monthly installments.[13] The Agreement stated that the first payment was due within 30 days. Madison claims that she called Nutter and was told to submit her first payment by May 7, 2013.[14] On or about May 2, 2013, Madison signed the agreement, obtained a check from her church in the amount of the first payment, and mailed them to Nutter, which received them on May 6, 2013.[15]

The foreclosure sale took place on May 7, 2013, and Nutter purchased Madison's house from the trustee for $27,000.[16] Nutter transferred the property to Fannie Mae on May 10, 2013.[17] Fannie Mae filed for eviction,[18] Madison failed to appear, and final judgment was entered for Fannie Mae on September 10, 2013.[19] This litigation ensued.

---

[13] Repayment Plan Agreement, Exhibit P1 to Response to Defendants' Motion for Summary Judgment ("Madison Response"), Docket Entry No. 25-2.

[14] Complaint, Exhibit A.7 to Notice of Removal, Docket Entry No. 1-8, p. 15 ¶ 21.

[15] See Repayment Plan Agreement, Exhibit P1 to Madison Response, Docket Entry No. 25-2, pp. 1-3.

[16] Trustee's Deed, Exhibit 10 to Nutter MSJ, Docket Entry No. 22-12.

[17] Special Warranty Deed, Exhibit 11 to Nutter MSJ, Docket Entry No. 22-13.

[18] Complaint, Exhibit A.7 to Notice of Removal, Docket Entry No. 1-8, p. 15 ¶ 26.

[19] Final Judgment, Cause No. 1035412, County Civil Court at Law No. Three, Harris County, Texas, Exhibit 11C to Fannie Mae MSJ, Docket Entry No. 23-13.

## II. Motions for Summary Judgment

Madison's Complaint asserts claims for breach of contract, tortious interference with existing contract, breach of fiduciary duty, fraud, trespass to real property, negligence, negligent misrepresentation, and wrongful foreclosure.[20] Nutter and Fannie Mae have moved for summary judgment on all of Madison's claims.

### A. Standard of Review

Summary judgment is appropriate if the movant establishes that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986). The moving party is entitled to judgment as a matter of law if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting

---

[20]Complaint, Exhibit A.7 to Notice of Removal, Docket Entry No. 1-8, pp. 16-18.

Celotex, 106 S. Ct. at 2553). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Id. If, however, the moving party meets this burden, "the nonmovant must go beyond the pleadings" and produce evidence that specific facts exist over which there is a genuine issue for trial. Id. (citing Celotex, 106 S. Ct. at 2553-54). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).

"In order to avoid summary judgment, the nonmovant must identify specific facts within the record that demonstrate the existence of a genuine issue of material fact." CQ, Inc. v. TXU Min. Co., L.P., 565 F.3d 268, 273 (5th Cir. 2009). "The party must also articulate the precise manner in which the submitted or identified evidence supports his or her claim." Id. (internal quotation marks and citation omitted). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." Id. (same).

In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant,

-6-

"but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

**B. Analysis**

    1. <u>Claims Against Nutter</u>

        (a) Breach of Contract

To prevail on a breach of contract claim under Texas law a plaintiff must prove: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from the breach. <u>Lewis v. Bank of America NA</u>, 343 F.3d 540, 544-45 (5th Cir. 2003) (citing <u>Palmer v. Espey Huston & Assocs.</u>, 84 S.W.3d 345, 353 (Tex. App.—Corpus Christi 2002, pet. denied)). "[A] party to a contract may not bring a suit for the contract's breach if that party, itself, is in default." <u>Ybarra v. Wells Fargo Bank, N.A.</u>, No. 13-50881, 2014 WL 3562759, at *2 (5th Cir. July 21, 2014) (citing <u>Dobbins v. Redden</u>, 785 S.W.2d 377, 378 (Tex. 1990)).

Nutter argues that Madison cannot maintain a breach of contract action because "[t]here is no evidence that [she] performed her obligations under the Mortgage Documents."[21] Specifically, Nutter argues that Madison did not procure flood insurance as required. It further argues that "there is no

---

    [21]Nutter MSJ, Docket Entry No. 22, p. 7 ¶ 20.

evidence that [Nutter] breached any provisions of the Mortgage Documents" because Nutter properly notified Madison of her default prior to foreclosure.[22]

As a threshold matter, it is not entirely clear from the summary judgment evidence and briefing when Madison was required to obtain flood insurance, the extent of her compliance with that requirement, and whether, under the Mortgage Agreements, she was required to repay Nutter for that insurance upon demand. The Mortgage Agreements specify that Madison is to maintain flood insurance on the secured property.[23] However, Madison has provided an unsigned, unauthenticated Flood Insurance Certification that appears to pertain to her Mortgage Agreements and states that "FLOOD INSURANCE IS NOT REQUIRED."[24] She has also provided evidence that she procured flood insurance for the period 3/18/2012 - 3/18/2013.[25] However, she does not appear to contest the fact that Nutter purchased flood insurance on her behalf and that she did not pay Nutter for that insurance prior to May of 2013. The court need not resolve these issues on summary judgment, however, because Nutter has not met its burden with respect to Madison's claim that

---

[22]Id. ¶ 21.

[23]See, e.g., Adjustable Rate Deed of Trust, Exhibit 3 to Nutter MSJ, Docket Entry No. 22-5, p. 2 ¶ 2.

[24]Flood Insurance Certification, Exhibit P6 to Madison Response, Docket Entry No. 25-8.

[25]See Flood Policy Declarations, Exhibit P9 to Madison Response, Docket Entry No. 25-11.

Nutter agreed not to foreclose if Madison made monthly payments to reimburse Nutter for the insurance it purchased.

Nutter does not dispute the existence of the Repayment Plan Agreement. In its Answer Nutter stated that "the correspondence," i.e., the Agreement, "speaks for itself and no further response is required."[26] However, Nutter's Motion for Summary Judgment neither acknowledges the Repayment Plan Agreement nor offers any reason why it would not be an enforceable contract obligating Nutter not to foreclose absent a breach of that Agreement.[27] Nor does Nutter dispute Madison's performance under the Agreement, Nutter's foreclosure in spite of the Agreement, or harm to Madison resulting from that foreclosure.

In her Response Madison has provided a signed copy of the Repayment Plan Agreement.[28] The Agreement, dated April 23, 2013, states at the top, "THIS REPAYMENT PLAN AGREEMENT REPLACES ANY PREVIOUS REPAYMENT PLAN AGREEMENT YOU HAVE RECEIVE[D]." In the Agreement Madison acknowledges that she failed to make payments of

---

[26] See Answer to Plaintiff's Second Amended Petition and Application for Injunction and Temporary Restraining Order, Docket Entry No. 6, p. 3 ¶¶ 18, 19, 20, 23.

[27] While the section of Madison's Complaint titled "Plaintiff's Claim for Breach of Contract" refers only to the "reverse mortgage agreement," seven out of fourteen paragraphs of the "Facts" section relate to the Repayment Plan Agreement. See Complaint, Exhibit A.7 to Notice of Removal, Docket Entry No. 1-8, pp. 3-5. Nutter had fair notice of the nature of Madison's claim.

[28] Repayment Plan Agreement, Exhibit P1 to Madison Response, Docket Entry No. 25-2.

"taxes and/or insurance premiums" as required in her reverse mortgage agreement and that Nutter advanced $3,807.25 to cover those payments. Madison agrees to make monthly payments to Nutter in the amount of $317.27 for twelve months, with the first payment being due 30 days after "the date set forth above." The Agreement states that Nutter must receive a signed copy of the Agreement before it can accept payments, and the Agreement specifies that it may be mailed to "the address set forth above." The Agreement bears Madison's signature, dated May 2, 2013. Madison has provided a Domestic Return Receipt showing that she mailed the Agreement -- and a check for $317.27 -- to the address set forth in the Agreement and that they were delivered on May 6, 2013.[29] A non-judicial foreclosure sale was held on May 7, 2013, and Nutter purchased the property from the trustee for $27,000.[30] Nutter returned Madison's check, uncashed, on July 2, 2013, "due to the status of the loan."[31]

Although the Repayment Plan Agreement does not specifically state that Nutter may not foreclose so long as Madison makes payments under the Agreement, it is reasonably susceptible to that interpretation. For example, while the Agreement states that

---

[29]Id.

[30]Trustee's Deed, Exhibit 10 to Nutter MSJ, Docket Entry No. 22-12.

[31]Letter from James B. Nutter & Company Insurance Department to Greater M[t]. Carmel Baptist Church, Exhibit P2 to Madison Response, Docket Entry No. 25-3.

Madison will "remain in default until such time that the terms of the repayment agreement are satisfied in full," it also states that Nutter may foreclose should Madison "fail to comply with the terms of this <u>repayment plan agreement</u>," or "if there is any <u>other</u> default under the terms of [the] reverse mortgage agreement."[32]

Drawing all inferences in favor of the nonmovant, the court concludes that a reasonable jury could find for Madison. Nutter is not entitled to summary judgment on Madison's breach of contract claim.

### (b) Fraud

The elements of a cause of action for fraud under Texas law are (1) a material misrepresentation that (2) was false, (3) was either known to be false when made or was asserted without knowledge of its truth, (4) was intended to be relied upon, (5) was relied upon, and (6) caused injury. <u>Sears, Roebuck & Co. v. Meadows</u>, 877 S.W.2d 281, 282 (Tex. 1994). "A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made." <u>Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.</u>, 960 S.W.2d 41, 48 (Tex. 1998). "However, the mere failure to perform a contract is not evidence of fraud." <u>Id.</u> To prevail, a plaintiff must present evidence that the defendant

---

[32]Repayment Plan Agreement, Exhibit P1 to Madison Response, Docket Entry No. 25-2 (emphasis added).

"made representations with the intent to deceive and with no intention of performing as represented." Id.

Again ignoring the factual basis of Madison's complaint, Nutter argues that "Plaintiff has not alleged any of the underlying facts required to support a cause of action for fraud, only the elements themselves."[33] Nutter asserts that "Plaintiff's Complaint should give [Nutter] fair notice of the essence of Plaintiff's claim."[34] The essence of Madison's claim is clear from the factual basis of the complaint: Madison alleges that Nutter told her she could satisfy her obligations by making monthly payments, that a Nutter representative told Madison to make the first payment by May 7, 2013, that Madison sent her first month's payment, that Nutter received it on May 6, 2013, and that Nutter nevertheless foreclosed on Madison's house on May 7, 2013.

Nevertheless, Madison has not met her burden on summary judgment. Madison argues that because the foreclosure sale was scheduled for May 7, 2013, Nutter had to know at the time it sent the April 23, 2013, letter that the proposed 30-day deadline to respond extended beyond the date of the foreclosure sale.[35] That is to say, Nutter represented that Madison had 30 days to respond, Nutter knew this representation to be false and intended that

---

[33]Nutter MSJ, Docket Entry No. 22, p. 9 ¶ 27.

[34]Id. ¶ 28.

[35]Madison Response, Docket Entry No. 25, pp. 7-8.

Madison rely on it, and Madison did rely on it, to her detriment. However, according to her Complaint, Madison did not rely on the 30-day deadline. She allegedly called Nutter and was told that she had until May 7, 2013, to send in her check.[36] Madison apparently relied on this latter representation and sent her check on or about May 2, 2013.[37] Apart from inferences based on the respective dates of the letter and scheduled foreclosure sale, Madison offers no evidence of Nutter's intent at the time of the Agreement. Assuming that the Agreement bound Nutter not to foreclose, the fact that Nutter nevertheless did so gives rise to a breach of contract claim. But it does not, by itself, give rise to a reasonable inference that Nutter intended to deceive Madison and had no intention of performing as represented. Madison therefore has not met her burden on summary judgment.

(c) Remaining Claims

Nutter argues that there is insufficient evidence to raise a fact issue on Madison's remaining claims. Having reviewed Madison's brief in response and the evidence attached thereto, the court agrees.

Madison's claim for tortious interference with existing contract fails because "a party cannot tortiously interfere with

---

[36]See Complaint, Exhibit A.7 to Notice of Removal, Docket Entry No. 1-8, p. 4 ¶ 21.

[37]See Repayment Plan Agreement, Exhibit P1 to Madison Response, Docket Entry No. 25-2, pp. 2-3.

its own contract." Holloway v. Skinner, 898 S.W.2d 793, 796 (Tex. 1995). To the extent that her reply brief appears to reformulate the tortious interference claim as one for constructive eviction,[38] this claim fails as Nutter was not Madison's landlord. See Holmes v. P.K. Pipe & Tubing, Inc., 856 S.W.2d 530, 539 (Tex. App.—Houston [1st Dist.] 1993, no writ.).

Madison's claim for breach of fiduciary duty fails because "Texas courts have held that the relationship between a borrower and lender is not a fiduciary one." Williams v. Countrywide Home Loans, Inc., 504 F. Supp. 2d 176, 192 (S.D. Tex. 2007), aff'd, 269 F. App'x 523 (5th Cir. 2008). Madison's contention that "[t]he court in Home Loan[39] made clear the fact that a claim for breach of duty under an applicable standard of care proves the Plaintiff was foreseeable to injury" does not illuminate a fiduciary relationship in this case.

Madison's claim for negligent misrepresentation fails because "'[a] promise to act or not in the future cannot form the basis of a negligent misrepresentation claim.'" Bancroft Life & Cas. ICC, Ltd. v. GRBR Ventures, L.P., No. H-12-2252, 2014 WL 1322984 (S.D. Tex. Mar. 31, 2014) (quoting Roof Sys., Inc. v. Johns Manville Corp., 130 S.W.3d 430, 439 (Tex. App.—Houston [14th Dist.] 2004, no

---

[38]See Madison Response, Docket Entry No. 25, p. 4 (listing two of the four elements of a constructive eviction claim under the heading "Tortious Interference").

[39]Madison has not provided a citation for this case.

pet.)). Madison's argument that "there is no evidence . . . to suggest that defendants knew proper remediation procedures, or if initiating foreclosure proceedings regardless of payment or rejection of payment would be sufficient"[40] has no bearing on the alleged misrepresentation.

Madison's claim for trespass to real property fails because she has not alleged or shown that Nutter "entered [Madison's] land." See Texas Woman's Univ. v. The Methodist Hosp., 221 S.W.3d 267, 286 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Furthermore, as of the date of the foreclosure sale, Madison no longer "own[ed] or ha[d] a lawful right to possess [the] real property." See id. Madison's argument that Nutter "unlawfully entered the property by placing the home in foreclosure sale[] and then buying it, in an attempt to strip Plaintiff of title"[41] is unavailing.

Madison's claim for negligence also fails. "[T]here is little guiding authority to enlighten [the] court as to whether there is a recognized duty to conform to a certain standard of conduct that might: (a) be owed from a mortgage lender or servicer to its borrower; and (b) give rise to a negligence claim," In re Thrash, 433 B.R. 585, 596 (Bankr. N.D. Tex. 2010). The one case cited by Madison did not resolve the issue. See id. However, the court in Thrash found that the plaintiffs' claims failed because, like here,

---

[40]Madison Response, Docket Entry No. 25, p. 12.

[41]Id. at 11.

-15-

they "put forth no summary judgment evidence of any damages suffered other than alleged economic harm and mental anguish/anxiety."[42] Id. at 598. "[C]ase law in Texas clearly does not allow a claim for negligence to proceed where there is only a claim of mere economic damages and/or mental anguish." Id. at 600. Madison nevertheless argues that "[t]he servicer has liability if he does not exercise reasonable care after giving Plaintiff notice on foreclosure sale proceedings intent."[43] The court is not persuaded.

Finally, Madison's claim for wrongful foreclosure fails because she has not pleaded or shown "a causal connection between a defect in the foreclosure sale proceedings and [a] grossly inadequate selling price." See Pollett v. Aurora Loan Services, 455 F. App'x 413, 415 (5th Cir. 2011) (citing Sauceda v. GMAC Mortg. Corp., 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.). Madison's assertion that the "sale of Plaintiff's property was made for a total consideration of $10.00"[44] is factually incorrect. Nutter purchased the house at foreclosure for $27,000.[45] Even if this were shown to be "grossly inadequate,"

---

[42]See Damages for Plaintiff, Complaint, Exhibit A.7 to Notice of Removal, Docket Entry No. 1-8, p. 18 ¶ 59.

[43]Madison Response, Docket Entry No. 25, p. 11.

[44]Id. at 16.

[45]Trustee's Deed, Exhibit 10 to Nutter MSJ, Docket Entry No. 23-11.

Madison has not shown any causal connection between the price and a defect in the proceedings.

### 2. Claims Against Fannie Mae

With the exception of her claim for trespass to real property, Madison has not alleged facts implicating Fannie Mae in any of her claims. "To recover damages for trespass to real property, a plaintiff must prove that (1) the plaintiff owns or has a lawful right to possess real property, (2) the defendant entered the plaintiff's land and the entry was physical, intentional, and voluntary, and (3) the defendant's trespass caused injury to the plaintiff." Texas Woman's Univ., 221 S.W.3d at 286. Fannie Mae has legal title to Madison's property and a final judgment for possession.[46] As such, Madison's trespass claim fails as a matter of law. Fannie Mae is entitled to summary judgment on all of Madison's claims.

## III. Conclusions and Order

For the reasons explained above, the court concludes that Madison has raised a triable issue of fact on her breach of contract claim against Nutter, but that the remainder of her clams against Nutter and Fannie Mae fail as a matter of law. Accordingly, James B. Nutter & Co.'s Amended Motion for Summary

---

[46]See Special Warranty Deed, Exhibit 11 to Fannie Mae MSJ, Docket Entry No. 23-12; Final Judgment, Exhibit 11-B to Fannie Mae MSJ, Docket Entry No. 23-13.

Judgment (Docket Entry No. 22) is **GRANTED IN PART** and **DENIED IN PART**, and Federal National Mortgage Association's Motion for Summary Judgment (Docket Entry No. 23) is **GRANTED**. Plaintiff's claims against Fannie Mae are **DISMISSED WITH PREJUDICE**.

**SIGNED** at Houston, Texas, this 22nd day of December, 2014.

　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　SIM LAKE
　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE